UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANGELA MARIE CHRISTY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 12cv5217JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 4; Consent to Proceed Before a United States Magistrate Judge, ECF No. 5). This matter has been fully briefed (*see* ECF Nos. 13, 16, 17).

After considering and reviewing the record, the Court finds that the ALJ failed to provide specific and legitimate reasons for his failure to credit fully opinions from

plaintiff's treating doctors. Therefore, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

## BACKGROUND

Plaintiff, ANGELA MARIE CHRISTY, was twenty-eight years old on her alleged date of disability onset of January 1, 2008 and thirty-one years old on the date of the ALJ's decision (*see* Tr. 22, 123).

She has past relevant work experience as a dishwasher, hostess, retail sales clerk, and grocery store sales clerk (*see* Tr. 30). However, plaintiff testified that she did not remember the last time she had a job (Tr. 50). Plaintiff is 5'4" and weighs 250 pounds (*id.*). She testified that doctors have recommended that she lose weight (*id.*).

Plaintiff "feels that she is unable to work because of physical and mental health issues. She suffers from fibromyalgia, has had surgery on both knees, so she finds it hard to get around, and said she has had a dozen surgeries" (*see* Tr. 371). Plaintiff has the severe impairments of degenerative joint disease in the knees, gastroesophageal reflux disease, diabetes, fibromyalgia, depression, panic disorder without agoraphobia, cognitive disorder and obesity (*see* Tr. 19).

Plaintiff's treatment record includes a report of a traumatic brain injury on April 30, 2005 as a result of an all terrain vehicle accident in which she was not wearing a helmet (*see* Tr. 371). Plaintiff appears to have suffered from both retrograde amnesia and posttraumatic amnesia regarding this event (*see id.*).

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income (SSI) on January 29, 2009 (Tr. 17, 123-25). Her application was denied initially and following reconsideration (Tr. 80-87, 91-93). Plaintiff's requested hearing was held before Administrative Law Judge Steve Lynch ("the ALJ") on December 17, 2010 (*see* Tr. 46-64). On December 29, 2010, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 14-31).

On January 19, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). *See* 20 C.F.R. § 404.981. On March 12, 2012, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision (*see* ECF No. 1). Defendant filed the sealed administrative transcript regarding this matter ("Tr.") on May 23, 2012 (*see* ECF Nos. 10, 12).

In her Opening Brief, plaintiff contends that the ALJ failed to evaluate properly the medical evidence, including the opinions of Dr. Jerry Gardner, Ph.D. and Dr. Eugene Fierman, M.D.; Dr. Michael Brown, Ph.D. and Michael Regets, Ph.D.; Dr. Wendy J. Biss, Ph.D.; Dr. Robert Schneider, Ph.D.; and Dr. Mary White, M.D. (*see* ECF No. 13, pp. 4-17). Plaintiff also contends that the ALJ failed to evaluate plaintiff's testimony and credibility properly (*see id.* at pp. 17-20), and that the ALJ improperly found that plaintiff was able to perform other work existing in the national economy (*id.* at pp. 20-22).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS

6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

### DISCUSSION

1. **The ALJ failed to evaluate the medical evidence properly**.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

a. **The ALJ failed to evaluate the opinions of Dr. Wendy J. Biss, Ph.D. properly**.

Dr. Wendy J. Biss, Ph.D., licensed psychologist, ("Dr. Biss") examined plaintiff in May, 2008 (*see* Tr. 324-33). Dr. Biss performed a mental status examination and performed psychological testing of plaintiff (Tr. 327, 329-30). Dr. Biss assessed plaintiff's mental status examination as demonstrating that plaintiff appeared "able to easily read and write small sentences, perform immediate recall, name common objects, perform basic attention tasks, such as spelling backwards, perform basic repetition, perform tasks of visual motor integration and follow 3 step commands" (*see* Tr. 330).

Included in her major findings was the finding by Dr. Biss that plaintiff's performance on psychological testing indicated that plaintiff "likely over-reported her level of distress and level of cognitive impairment," and that "malingering is strongly suspected" (*see* Tr. 331). However, Dr. Biss also noted that throughout her interview with plaintiff, plaintiff's "behaviors appeared congruent with someone who exhibits Borderline and Antisocial traits" (*see* Tr. 332). Dr. Biss continued, noting that plaintiff's "over-reporting of symptoms, use of lying for personal gain, likelihood of malingering, consistent irresponsibility and lack of remorse appear consistent with Antisocial traits" (*id.*). She found that plaintiff also "appeared to exhibit the following Borderline traits: affective instability due to marked reactivity of mood and recurrent suicidal threats or behaviors; [h]owever, no personality testing was conducted to confirm these traits" (*id.*).

Dr. Biss indicated her opinion that plaintiff suffered from moderate limitations on her ability to interact appropriately with the public, with supervisors, and with co-workers

(*see* Tr. 325). She hand wrote into the evaluation form the reasoning behind these opinions: "Due to presence of antisocial/borderline personality traits based on diagnostic impression; she may encounter work difficulties" (*id.*).

Plaintiff contends that when the ALJ was evaluating plaintiff's residual functional capacity ("RFC"), he failed to include any limitation on plaintiff's ability to interact appropriately with supervisors and co-workers, as opined by Dr. Biss, and he failed to elucidate in his written decision why these opinions by Dr. Biss were not adopted (*see* Opening Brief, ECF NO. 13, pp. 10-11). Defendant argues that the ALJ "properly explained why he did not include any limitations associated with these particular findings" (*see* Response, ECF No. 16, pp. 7-8). For the reasons discussed below, the Court is not convinced by defendant's argument.

First, there is no indication from the ALJ's decision why he rejected any of the opinions of Dr. Biss (*see* Tr. 28). The ALJ discussed the opinions from Dr. Biss, and noted that she opined that plaintiff had "moderate limitation in the ability to interact appropriately with the public, supervisors, and co-workers because of antisocial/borderline personality traits based on Dr. Biss's diagnostic impression" (*see id.*). The ALJ indicated specifically that this opinion by Dr. Biss was given "some weight because it is generally consistent with the evidence of record" (*id.*). The ALJ fails to provide a single reason why this opinion was given only some weight. Instead, the ALJ proceeds to delineate the ways in which Dr. Biss's opinion was consistent with the rest of the evidence of record.

1    Defendant claims that the ALJ discredited Dr. Biss's opinion because it was based on testing within plaintiff's control and due to a lack of credibility of plaintiff and potential malingering (*see* Response, ECF No. 16, p. 8). *See also Bray*, *supra*, 554 F.3d at 1226-27 (*citing Chenery Corp.*, *supra*, 332 U.S. at 196) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"). However, the ALJ nowhere indicates that he fails to credit fully Dr. Biss's opinions due to a lack of credibility of plaintiff or due to Dr. Biss's findings regarding potential malingering: in fact, he indicates the exact opposite. It is true that the ALJ noted that Dr. Biss assessed that plaintiff appeared to give little effort; may have been over-reporting symptoms; and appeared to meet criteria for Valium abuse (*see* Tr. 28). However, the ALJ specifically indicated that such evidence "supports the opinion of Dr. Biss" (*id.*). Therefore, defendant's argument that the ALJ explained how this evidence supported his failure to credit fully Dr. Biss's opinions is not persuasive.

   The ALJ adopted part of Dr. Biss's opinion in that he found that plaintiff "would not work well with the general public" (*see* Tr. 21). However, the ALJ failed to adopt her opinion that plaintiff also suffered from moderate limitations in her ability to interact appropriately with co-workers and supervisors (*see* Tr. 325). Based on a review of the relevant record, the Court concludes that the ALJ failed to explain adequately why the opinion from the examining doctor, Dr. Biss, was rejected when the ALJ made the determination regarding plaintiff's RFC. Therefore, the ALJ committed legal error when

he failed to provide specific and legitimate reasons for his failure to credit fully opinions by Dr. Biss regarding plaintiff's functional limitations on her ability to function in a work setting. *See Lester*, *supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043).

In addition, according to Social Security Ruling ("SSR") 96-8p, an RFC assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

Based on the relevant record, the Court finds that the ALJ committed error in his review of the medical opinion of Dr. Biss and concludes that this error was not harmless. When considering the record as a whole, the error involved the determination regarding plaintiff's RFC, and the ultimate decision regarding disability was based in part on plaintiff's RFC; therefore this error affected the ultimate conclusion regarding plaintiff's disability. *See Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26,

1  *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki*, *supra*, 556 U.S. at 407; *Stout,*

2  *supra*, 454 F.3d at 1054-55.

3

4          b. **The ALJ failed to evaluate the opinions of Dr. Robert Schneider,**

5             **Ph.D. ("Dr. Schneider") properly**.

6      Defendant first argues that the ALJ properly rejected the opinions of Dr. Schneider

7  on the basis that they were not explained adequately (*see* Response, ECF No. 16, p. 9).

8  Next, however, defendant contends that the ALJ accounted for the limitations as opined

9  by Dr. Schneider in the findings regarding plaintiff's RFC (*see id.*, pp. 9-10). For the

10 reasons explained below, the Court is not persuaded by either one of these arguments.

11      If the ALJ had credited the opinions of Dr. Schneider, there would have been no

12 need to provide a reason for any failure to credit such opinions. However, contrary to the

13 defendant's argument, that is precisely what the ALJ did here. The ALJ explicitly

14 indicated that he was giving the opinions of Dr. Schneider "limited weight" (*see* Tr. 28).

15 The ALJ provided his own contrary opinion of selective information from Dr.

16 Schneider's treatment report, and then indicated explicitly his finding that "Dr. Schneider

17 failed to explain why he felt the claimant could not have tolerated employment" (*see id.*).

18 However, this reason by the ALJ is not legitimate as Dr. Schneider clearly elucidated his

19 explanation as to why he opined that plaintiff could not have tolerated employment (*see*

20 Tr. 376). *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043).

21

22      Dr. Schneider examined and evaluated plaintiff on October 28, 2008 (Tr. 371-76).

23 He interviewed plaintiff and conducted multiple psychological assessments and tests (*see*

24

Tr. 371-75). For example, plaintiff exhibited delayed performance on both Trails A & B neuropsychlogical screening tests (*see* Tr. 374). The Trails A test is a simple measure of speed on which plaintiff performed in the 25th percentile (*see id.*). On the Trails B test, however, which requires the individual to complete a more complex task requiring cognitive efficiency and cognitive control, plaintiff was more impaired, scoring in the 10th percentile (*see id.*).

Dr. Schneider found that plaintiff's profile was exaggerated, but indicated that plaintiff viewed herself "as the sum of her symptoms and, in fact, one of the characteristics of postconcussive syndrome is a wide range of unexplainable symptoms and physical difficulties" (*see* Tr. 375). He indicated that plaintiff's descriptions of her residual symptomatology was "very consistent with the head injury" (*see* Tr. 376).

Dr. Schneider indicated his impression that it was "very unlikely that she could sustain the typical demands of gainful employment" (*see* Tr. 375). He also opined that plaintiff required "modification of medications, more aggressive treatment for her depression and anxiety and sleep and counseling by a psychologist who is familiar with the residuals of a serious traumatic brain injury" (*id.*). Dr. Schneider diagnosed plaintiff with, among other things, major depressive disorder with anxiety; panic disorder without agoraphobia; postconcussive syndrome; cognitive disorder; and a rule out diagnosis of somatization disorder (*see* Tr. 376).

Dr. Schneider indicated one of his concluding opinions as follows:

> It is very unlikely that she could tolerate the stresses, demands and expectations of gainful employment at the current time. She clearly has difficulty with divided attention and would have difficulty in a multi-task

> environment and difficulty responding to rapidly occurring stimuli. Performance on Trails A & B suggest that she would be slow in the course of employment.

(*id.*).

As already indicated, the ALJ failed to credit fully Dr. Schneider's opinions because of his explicit finding that "Dr. Schneider failed to explain why he felt the claimant could not have tolerated employment" (*see* Tr. 28). Based on the relevant record and for the reasons stated, the Court concludes that the ALJ failed to provide specific and legitimate reasons for his failure to credit fully the opinions of Dr. Schneider. *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043). Considering the record as a whole, the Court finds that this error is harmful because it affected the ALJ's determination regarding plaintiff's residual functional capacity ("RFC"), as plaintiff's RFC does not adequately account for Dr. Schneider's opinions regarding plaintiff's difficulty with divided attention; difficulty in a multi-task environment; difficulty responding to rapidly occurring stimuli; and difficulty maintaining adequate pace in the course of employment (*see* Tr. 21, 376). The ALJ's ultimate determination regarding plaintiff's lack of disability relied substantially on the ALJ's assessment of plaintiff's RFC, demonstrating the harmfulness of the error in the evaluation of the medical opinion evidence offered by Dr. Schneider. *See Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki, supra*, 556 U.S. at 407; *Stout, supra*, 454 F.3d at 1054-55.

Therefore, this matter shall be reversed and remanded, and must be evaluated anew by the Administration.

     c.  **The ALJ failed to evaluate properly the opinions of Dr. Mary White, M.D. ("Dr. White").**

Dr. White examined and evaluated plaintiff on March 28, 2009 (*see* Tr. 454-58). She interviewed plaintiff (*see* Tr. 454-55) and conducted a physical examination (*see* Tr. 455-57). Dr. White provided a functional assessment/ medical source statement regarding plaintiff's ability to function in a work setting (*see* Tr. 458). She opined that plaintiff had a maximum standing and walking capacity for less than two hours; that plaintiff had postural limitations; and, that plaintiff "should not work at heights, around heavy machinery, extremes of temperature, chemicals, dust, fumes, gasses or excessive noise, due to her overall weakness and poor balance, as well as, psychiatric illness" (*see* Tr. 458).

    The ALJ discussed the opinion of Dr. White and gave her opinion "some weight because it is generally consistent with the objective medical evidence of record" (*see* Tr. 27-28). However, the ALJ failed to credit the opinion regarding limitations to standing and walking, because the ALJ indicated that evidence "that is more recent suggests increased ability to stand and walk" (*see* Tr. 28). The ALJ then elucidated evidence suggestive of plaintiff's increased standing and walking ability, such as that plaintiff went on a camping trip; moved into an upstairs apartment; and prepared her household to move again (*id.*). The ALJ backed up his failure to adopt Dr. White's opinions regarding standing and walking with specific and legitimate reasons.

However, the ALJ next indicates that Dr. White's "recommended limitations on temperature extremes, chemicals, pulmonary irritants, and noise have not been adopted because they are not supported by the record" (*id.*). The ALJ does not include any citation to any portion of the record that he finds does not support Dr. White's recommended limitation, making this general finding unspecific (*id.*). The ALJ also indicates that he failed to adopt these limitations because "Dr. White added these restrictions for mental health reasons, yet she is not an expert in this area" (*see id.*). A doctor does not have to be a specialist in mental health in order to provide a medical opinion regarding mental health limitations, although area of specialty is a relevant factor to be considered. *See, e.g., Van Nguyen v. Barnhart,* 170 Fed. Appx. 471, 473 (9th Cir. 2006) (per curiam) (unpublished opinion) ("the ALJ may not discredit [the treating general physician's] opinion on the ground that she is not a board certified psychiatrist") (*citing Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)); *Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 120 n.4 (6th Cir. 2010); 20 C.F.R. 404.1527(c)(5). The Ninth Circuit specifically has indicated that "it is well established primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *See Sprague, supra*, 812 F.2d at 1232 (*citing* C. Tracy Orleans, Ph.D., Linda K. George, Ph.D., Jeffrey L. Houpt, M.D. and Keith H. Brodie, M.D., How Primary Care Physicians Treat Psychiatric Disorders: A National Survey of Family Practitioners, 142 Am. J. Psychiatry 52 (Jan. 1985)).

In addition, Dr. White indicated that she was adding these restrictions "due to [plaintiff's] overall weakness and poor balance, as well as, psychiatric illness" (*see* Tr.

458). Although the ALJ also notes that plaintiff hikes, drives, attends parties and watches television, these activities do not appear to demonstrate that plaintiff does not have any restrictions regarding exposure to heights, being "around heavy machinery, extremes of temperature, chemicals, dust, fumes, gasses or excessive noise" (*see id.*). It does not appear that going to a party, hiking, driving or watching television necessarily involves any of these environmental hazards, therefore, the ALJ has not explained adequately why he failed to credit fully the opinion from Dr. White regarding environmental hazards. This error should be corrected following remand of this matter.

### d. **The opinions of Dr. Jerry Gardner, Ph.D. and Dr. Eugene Fierman, M.D. regarding plaintiff's reading limitations should be evaluated anew following remand of this matter**.

Although defendant contends that the ALJ incorporated all of the limitations opined by Drs. Gardner and Fierman into plaintiff's residual functional capacity, whether or not their opinion regarding plaintiff's limitation to reading simple sentences was considered properly is unclear (*see* Tr. 350, 367-70). The ALJ implicitly found that plaintiff was capable of performing at least at a reading level 2, as he found her capable of performing work as an electronics assembler (*see* Tr. 31). If relevant following remand of this matter, and following a reevaluation of the medical evidence, the consistency between a limitation to reading simple sentences and a reading level of two should be evaluated explicitly.

2. **The ALJ erred in his evaluation of plaintiff's testimony and credibility**.

The ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

First, the Court notes that a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Because of this reason, the relevant record, and the fact that the Court already has determined that this matter must be reversed and remanded for further evaluation of the medical evidence, *see supra*, section 1, the Court concludes that the testimony and credibility of plaintiff should be evaluated anew following remand of this matter.

The Court additionally notes the following particular issues for further elucidation by the ALJ: Although the ALJ indicated that "the claimant's activities of daily living reflect a higher level of functioning than what she has alleged in her application and testimony" (Tr. 30), the ALJ failed to make explicit findings regarding transferability to a work setting and failed to identify what particular allegations or testimony were contradicted by plaintiff's activities of daily living. *See Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). Similarly, although the ALJ indicated that plaintiff provided "inconsistent testimony," he failed to indicate which particular testimony was inconsistent with which other testimony, despite the fact that when evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *See Greger, supra*, 464 F.3d at 972 (*quoting Morgan, supra*, 169 F.3d at 599).

Based on the discussed errors and the relevant record, the Court concludes that the ALJ erred in his evaluation of the medical evidence and plaintiff's credibility, and that the entire five step evaluation process should be evaluated anew, including the step five

finding by the ALJ that plaintiff was able to perform other work existing in the national economy.

3. **This matter should be reversed and remanded to the Commissioner for further administrative proceedings**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

1  The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

## CONCLUSION

The ALJ failed to explain adequately why relevant medical opinions regarding plaintiff's ability to function in a work setting were not adopted fully into the determination regarding plaintiff's residual functional capacity.

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 4th day of December, 2012.

J. Richard Creatura
United States Magistrate Judge

ORDER ON PLAINTIFF'S COMPLAINT - 20